**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DENISE KAPPEL,

               Movant,

    v.

ADVANCED EQUITIES, INC.,

               Respondent.

No.:  08 CV 1991

JUDGE LEINENWEBER

MAGISTRATE JUDGE ASHMAN

## MEMORANDUM OF LAW IN SUPPORT OF RESPONDENT'S COUNTERPETITION TO MODIFY THE ARBITRATION AWARD AND IN OPPOSITION TO MOVANT'S MOTION TO CONFIRM

Respondent Advanced Equities, Inc. ("AEI"), by its attorneys, Shefsky & Froelich Ltd., respectfully submits the following memorandum of law (i) in support of its counterpetition under Section 11 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 11(a), to modify the arbitration award rendered on April 7, 2008 in the FINRA arbitration between Denise Kappel and AEI, and (ii) in opposition to Movant Denise Kappel's ("Ms. Kappel") motion to confirm, and states as follows:

### I.      INTRODUCTION

On April 7, 2008, a FINRA arbitration panel awarded Ms. Kappel $540,328 in compensatory damages, punitive damages and attorney's fees (the "Award"), a copy of which is attached hereto as Exhibit A.  The Award delineates the amount awarded for each claim. *See id*. The FINRA panel has made an evident material miscalculation in determining the dollar amounts for these claims, and pursuant to Section 11 of the Federal Arbitration Act, Respondent requests this Court modify the award to reflect the correct amount.  At issue in this motion is (1) the $200,000 in compensatory and punitive damages under Title VII, 42 U.S.C. § 1981; and (2) the $260,328 in compensatory damages for breach of employment agreement.

For the Title VII portion of the Award, the panel awarded Ms. Kappel $200,000 in compensatory and punitive damages. *See* Ex. A, p. 4, ¶ 3. Two hundred thousand dollars is the *statutory maximum* allowed under Title VII for a company that has between 200 and 501 employees. *See* 42 U.S.C. § 1981a(b)(3). This is a clear error because AEI did not have 100 employees, much less the 200 employees needed to award such damages. No evidence was submitted to the panel to justify such an award. Finally, because of this miscalculation, the attorneys' fees based on the $200,000 must be modified.

The Panel also awarded Ms. Kappel $260,328 for breach of her employment agreement. This amount was calculated by using the number of stock warrants to which the panel determined Ms. Kappel was entitled, multiplied by a price of $24. These damages were clearly arrived at by using an incorrect demonstrative exhibit passed out to the panel during closing arguments by Ms. Kappel's counsel. A copy of this demonstrative exhibit is attached hereto as Exhibit B (compare Exhibit B requesting the amount of $260,328 for the warrants, and the panel's award of $260,328 for these warrants). Where there are errors that appear on the face of an exhibit used by a panel in formulating an award, the award must be modified to correct the flaws in the calculations. *See, e.g., Asturiana De Zinc Marketing, Inc. v. LaSalle Rolling Mills, Inc.*, 20 F. Supp. 2d 670, 673 (S.D.N.Y. 1998) (court modified arbitration award that used an exhibit using incorrect amounts in its method of calculating damages, stating that "[s]ince the arbitrator's award otherwise matches the flawed amount to the dollar, it must be modified to … the amount yielded when these flaws are corrected.").

While the calculations on Exhibit B contain several errors, for the purposes of this motion, AEI presents only two issues for this Court to consider for modification with respect to the award of $260,328: (1) the panel neglected to reduce the value of the warrants by their cost

basis; and (2) there is nothing in the record establishing a value of Infinera warrants at $24 per warrant.

As detailed below, the Award should be modified to reflect the following: (1) $50,000 in compensatory and punitive damages under Title VII; (2) $20,000 in attorneys' fees; (3) $169,213.20 in compensatory damages for breach of employment agreement, or, in the alternative, (4) $201,754.20 in compensatory damages for breach of employment agreement.

## II.     ARGUMENT

Section 11 of the Federal Arbitration Act provides in pertinent part:

> In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration—
>
> (a) Where there was an evident material miscalculation of figures….
>
>         \*       \*       \*
>
> The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

9 U.S.C. § 11.  As detailed below, the panel's calculation contained several facial errors that must be corrected by this Court or referred to the FINRA panel to correct.

### A.     THE FINRA AWARD FOR DAMAGES UNDER TITLE VII MUST BE REDUCED TO COMPLY WITH STATUTORY CAP ON DAMAGES

Section 1981a(b)(3) provides a specific cap on the total amount of compensatory and punitive damages that may be awarded to an individual plaintiff in a given lawsuit for discrimination, harassment and retaliation.  It provides:

> The sum of the amount of compensatory damages awarded . . . for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, and the amount of punitive damages awarded under this Section, shall not exceed, for each complaining party –

(A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000;

(B) in the case of a respondent who has more than 100 and fewer than 201 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $100,000; and

(C) in the case of a respondent who has more than 200 and fewer than 501 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $200,000; and

(D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000.

42 U.S.C. § 1981a(b)(3).

At all times relevant to this action, AEI had well under 100 employees.  *See* Declaration of Rhonda Dixon, attached hereto as Exhibit C.  In order to support an award of $200,000 in punitive damages under Title VII, which is what the panel in this case did, AEI must have had "more than 200 and fewer than 501 employees in each of 20 or more calendar weeks in the current or preceding calendar year…."  *See* 42 U.S.C. § 1981a(b)(3).  Ms. Kappel did not, because she could not, proffer any evidence to support the notion that AEI had over 200 employees.  That didn't stop Claimant's counsel, however, from so claiming in his closing argument.  Claimant's counsel handed the panel a demonstrative exhibit that stated:

**Total Due Violation of Hostile Claim**
**$200,000 Based on Number of Employees**
**Being between 200-300**
**This includes Punitive Damages for <u>This Particular Claim</u>**

*See* Exhibit B, p.2.  Nowhere in the record, however, is there evidence to support the allegation that AEI had between 200-300 employees.  AEI's employee headcount during the current and preceding calendar year to Ms. Kappel's suit never went above 95 employees. *See* Ex. C. Because AEI has never had over 200 employees working for it, let alone during the relevant time

period, Ms. Kappel's award for punitive damages under Title VII must be adjusted from $200,000 to $50,000. *See* 42 U.S.C. § 1981a(b)(3)(A); *see also Hennessy v. Penril Datacomm Networks, Inc*., 69 F.3d 1344, 1354 (7th Cir. 1995) (affirmed district court's reduction of punitive damages to comply with statutory cap due to company's size).

> **B.    IF THE TITLE VII DAMAGES ARE MODIFIED TO $50,000, THE AWARD FOR ATTORNEYS FEES UNDER TITLE VII MUST BE MODIFIED TO $20,000**

Derivative of the modification of the Title VII portion of the Award, this Court should modify the portion of the Award for attorneys' fees. The Award currently provides:

> 4.) Claimant, Advanced Equities, Inc. is liable for and shall pay to Respondent Denise Kappel, the sum of $80,000 in attorneys' fees pursuant to Title VII 42 U.S.C. Section 2000e-5(k)….

Ex. A, p.4, ¶ 4.

Ms. Kappel's attorney submitted to the panel a fee petition requesting fees of 40% of any award entered in this matter, a copy of which is attached hereto as Exhibit D. According to the fee petition, the 40% was pursuant to his contingency agreement with his client. *See id*, p. 3. The panel awarded Ms. Kappel's counsel 40% of her award under Title VII, or $80,000. If the Court in fact modifies the Title VII portion of her Award from $200,000 to $50,000, then the Court should make the attorneys fee portion of the Award consistent, and reduce it to 40% of $50,000, which is $20,000.

> **C.    THE FINRA AWARD FOR COMPENSATORY DAMAGES FOR MS. KAPPEL'S WARRANTS DID NOT DEDUCT THE COST BASIS FOR THE WARRANTS**

Although the FINRA panel awarded Ms. Kappel $260,328 in compensatory damages for breach of employment agreement (*see* Ex. A), it failed to reduce her damages by the cost basis of the Infinera warrants. This mistake effectively gave Ms. Kappel an extra $5.40 per share in value. Because of this error, the Court should modify the award to reflect the true value of the

warrants awarded to Ms. Kappel, not some hypothetical stock price. *See BEM I, L.L.C. v. Anthropologie Inc.*, 2001 WL 197057 (N.D. Ill. Feb. 27, 2001) (court modified the award where the fees awarded should have been multiplied by 26.1% as opposed to 35.9%); *Asturiana De Zinc Marketing, Inc. v. LaSalle Rolling Mills, Inc.*, 20 F. Supp. 2d 670, 673 (S.D.N.Y. 1998) (court modified arbitration award that used an exhibit using incorrect amounts in its method of calculating damages); *Laurin Tankers America, Inc. v. Stolt Tankers, Inc.*, 36 F. Supp. 2d 645 (S.D.N.Y. 1999) (held that material miscalculations of figures by arbitrators in calculating damages was evident upon face of the award and remanded); *NetKnowledge Technologies, L.L.C. v. Rapid Transmit Technologies*, 2007 WL 518548, *6 (N.D. Tex. Feb. 20, 2007) (court held that the arbitrator, in double counting certain payments to arrive at the award, made a material miscalculation of figures and modified the award).

It is undisputed that the exercise price, or "strike price", of each warrant was $5.40-- indeed, Ms. Kappel's own demonstrative exhibit clearly states the strike price to be $5.40. *See* Ex. B, p. 1. Not only does Ms. Kappel concede a strike price of $5.40 (*see id.*), the following testimony of Mr. Keith Daubenspeck, Chairman of the Board of AEI's parent company, Advanced Equities Financial Corporation, also evidences the undisputed strike price:

Q.    When did you exercise the –

A.    I don't know what day they were exercised.

Q.    Tell us—and so the brokers got warrants or stock?

A.    I believe that the brokers were actually the—there was an exercise, and I believe the warrants that were entitled were exercised and the brokers were notified and given cash.

Q.    Why?

A.      To basically eliminate the issue of front running, so the brokers knew that they had the stock, okay, that the stock had been sold, that they had cash.  And then if they wanted to go back in the market and buy the stock back.

Q.      Did you take out—now, the warrants, if you give it to them, what's the tax consequences of giving warrants?

A.      I'm—I'm not a tax expert, sir.

Q.      Did you—did you exercise the warrants at the price of $20 a share they were trading at on December 5th?

A.      I don't believe that was the exercise price.

Q.      What was the exercise price?

A.      I believe it was $5.40.

*See* Kappel Hearing Transcripts, attached hereto as Exhibit E.

It is axiomatic that in order to exercise a warrant, any investor, including Ms. Kappel, would first have had to pay or deduct the strike price of $5.40 for each warrant.  Once the warrant is exercised, it can then be sold at the trading price of Infinera stock on the date of transaction.  The panel awarded Ms. Kappel the value of 10,847 warrants at $24 a share, for a total of $260,328.  *See* Exs. A and B.[1]  The panel, however, failed to deduct the warrants' strike price of $5.40 in its calculation.

Had the calculation been properly done, the panel should have included:

---

[1]      Exhibit B states on one line the amount of warrants that Ms. Kappel is entitled to be 10,847, yet on the next line it changes the amount to 11,389.  The calculation appears to be a simple typo, because although the line reflects 11,389 warrants, it comes to an amount of $260,328, which is arrived at by multiplying 10,847 by $24.  This typo does not affect AEI's argument for modification, however, it illustrates the seriousness of a panel relying on such an exhibit in calculating its award.

## COST BASIS FOR INFINERA WARRANTS

**10,847 (warrants) x $5.40 (strike price) = $58,573.80 (cost basis).**

**$260,328.00 − $58,573.80 = $201,754.20.**

Because the strike price was not accounted for in the panel's calculation, this Court should modify the award to deduct the cost basis of each warrant awarded to Ms. Kappel, or $5.40 per warrant.[2]   Accordingly, $58,573.80 should be subtracted from her compensatory damages for breach of employment agreement.

### D.    THERE WAS NO EVIDENCE TO SUPPORT A VALUE OF $24 A SHARE FOR INFINERA

Additionally, Ms. Kappel did not introduce any evidence of Infinera having a value of $24 a share.  Ms. Kappel herself offered only *one exhibit* with respect Infinera's value.  A copy of this Exhibit is attached hereto as Exhibit F.  Giving Ms. Kappel every benefit, as the Panel clearly intended, the highest value that this exhibit establishes Infinera having is $21 a share.[3] *See* Ex. F, p. 3.  This is the only evidence Ms. Kappel offered regarding Infinera share valuation. Again, the Panel made an evident material miscalculation by using an unsupported value from Ms. Kappel's demonstrative exhibit which overstated the value of the Infinera warrants to be $24 a share.  This award should be modified by using a value no greater than $21 a share.  The calculation should be:

---

[2]    The calculation is virtually identical if an investor elected to do a cashless exercise.

[3]    Even considering $21 a share is absurd, as pursuant to the private placement memorandum between Infinera and AEI, the warrants were subject to a 6 month lock up period and were not exercisable until the first week of December 2007.  The $21 value happened on November 5, 2007, which was firmly within the lock up period. *See* Ex. F.  The highest value the shares of Infinera ever reached after the lock up period was $19.33 on December 7, 2007. *See* AEI hearing exhibit, attached hereto as Exhibit G.  Not only does the panel's award ignore the impossibility of Ms. Kappel being able to legally exercise and sell her Infinera shares before December 7, 2007, the panel also erred in using a value of $24 a share, when the highest number in evidence was $21 a share.

## VALUE OF INFINERA WARRANTS

**10,847 (warrants) x $21.00 (per share)  = $227,787**

**$227,787 – $58,573.80 (cost basis) = $169,213.20.**

### III.    CONCLUSION

For the foregoing reasons, this Court should modify the award to: (1) reduce the compensatory and punitive damages under Title VII to reflect the statutory maximum allowed against a company of AEI's size, or to $50,000 from $200,000; (2) reduce the attorneys' fees portion of the award to reflect 40% of her damages awarded under Title VII, or to $20,000 from $80,000; (3) reflect the warrants to be $21 a share instead $24 a share and to deduct the cost basis of the warrants, or $58,573.80 from the final award for breach of employment agreement, reducing the award from $260,328 to $169,213.20; or, in the alternative; (4) subtract the cost basis of the warrants, or $58,573.80 from the final award for breach of employment agreement, reducing the award from $260,328 to $201,754.20.

DATED:  May 6, 2008                Respectfully submitted,

                                   ADVANCED EQUITIES, INC., *Respondent*


                                   BY: _____s/ James D. Wilson_____
                                            One of its attorneys

James D. Wilson (ARDC 3033643)
jwilson@shefskylaw.com
Sarah R. Farrell (ARDC 6282834)
sfarrell@shefskylaw.com
Attorneys for Respondent
SHEFSKY & FROELICH LTD.
111 East Wacker Drive, # 2800
Chicago, Illinois 60601
(312) 527-4000
1082936_1

# EXHIBIT A

## AWARD
### FINRA Dispute Resolution

In the Matter of the Arbitration Between:

Name of Claimant/Counter-Respondent

Advanced Equities, Inc.

vs.

Case Number: 06-01261
Hearing Site: Chicago, Illinois

Name of Respondent/Counter-Claimant

Denise Kappel

## NATURE OF THE DISPUTE

Member vs. Associated Person

## REPRESENTATION OF PARTIES

Advanced Equities, Inc. ("Claimant" or "AEI") was represented by Ronald M. Amato, Esq., Shaheen, Novoselsky, Staat, Filipowski & Eccleston, PC, Chicago, Illinois until on or about October 24, 2007. After that date, Claimant was represented by Andrew M. Zack, Esq., Munro & Zack, PC, Troy, Michigan.

Denise Kappel ("Respondent" or "Kappel") was represented by John R. Ostojic, Esq., Ostojic & Scudder, Chicago, Illinois until on or about August 2, 2007. After that date, Respondent was represented by Nicholas P. Iavarone, Esq., The Iavarone Law Firm, Chicago, Illinois and Alan F. Block, Esq., Block & Landsman, Chicago, Illinois.

## CASE INFORMATION

The Statement of Claim was filed on or about March 13, 2006. The Submission Agreement of Claimant, Advanced Equities, Inc. was signed on or about March 9, 2006. On or about September 19, 2006, Advanced Equities, Inc. filed a Reply to Denise Kappel's Counterclaim. On or about October 5, 2007, Advanced Equities, Inc. filed a Response to Denise Kappel's Motion to File an Amendment to her Counterclaim. On or about November 12, 2007, Advanced Equities, Inc. filed an Answer to Denise Kappel's Amendment to her Counterclaim.

The Statement of Answer and Counterclaim was filed by Respondent, Denise Kappel, on or about May 18, 2006. The Submission Agreement of Respondent, Denise Kappel, was signed but not dated. On or about September 21, 2007, Denise Kappel filed a Motion to

FINRA Dispute Resolution
Arbitration No. 06-01281
Award   Page 2 of 7

File the Amendment to her Counterclaim. On or about October 12, 2007, Denise Kappel
filed an Amendment to Her Counterclaim.

## CASE SUMMARY

Claimant asserted the following cause of action:  breach of contract. The cause of action
related to Claimant's allegation that Respondent signed an employment letter contract
("Employment Letter") that provided that in the event Respondent resigned any time before
eighteen months from the commencement of her employment, she would pay back a
portion of the draw paid to her that was in excess of the amount of commissions earned.
Claimant alleged that Respondent resigned within the eighteen month period stated in the
Employment Letter and received a draw. Therefore, Claimant alleged Respondent owes a
repayment of the excess in accordance with the Employment Letter.

Unless specifically admitted in her Answer, Respondent denied the allegations made in the
Statement of Claim and asserted affirmative defenses including the following: Respondent
had a verbal understanding with the Sales Manager and President of AEI that she would
receive compensation, in the form of cash and warrants, for the successful business deals
she brokered as an employee for AEI; AEI failed to pay Respondent warrants from a deal
she brokered; AEI's breach of the verbal agreement bars it from asserting a claim for
breach of contract against Respondent; and AEI is barred from seeking an award against
Kappel due to its own unclean hands.

Kappel asserted following causes of action in her Counterclaim and Amendment thereto:
breach of contract; account stated; sexual harassment and sexual discrimination pursuant
to Title VII of Civil Rights Act of 1964; fraud; and unjust enrichment. The causes of action
related to Kappel's allegation that she had a verbal agreement with AEI where she was to
receive half of the cash commission and half of the warrant commission gained by AEI as a
result of her closing a private placement of Infinera Corporation. Kappel alleged that AEI
paid her half the cash commission due but failed to pay half of the warrant commission.
Kappel also alleged that AEI had verbal policies in place that violated the terms of the
Employment Letter by requiring continuous employment until and 180 days to 360 days
after a liquidity event and reducing the commissions and fees due a broker who sold a
direct private equity investment. Kappel alleged that she experienced incidents of sexual
harassment, including inappropriate verbal comments and unwelcome sexual advances,
made by employees and management of AEI.  Kappel alleged that AEI required her to
generate higher commissions and fees than other employees in order to keep her office
and that other employees were not held to same requirements but were treated better than
Kappel.

Unless specifically admitted in its Answer to the Counterclaim, AEI denied the allegations
made in the Counterclaim and Amendment thereto and asserted affirmative defenses
including the following: Kappel is not entitled to Infinera warrants, which are currently
worthless; Kappel was not sexually harassed, and cannot substantiate her vague claims;

FINRA Dispute Resolution
Arbitration No. 06-01261
Award    Page 3 of 7

Kappel was not the victim of gender discrimination; AEI owed no fiduciary duties to Kappel;
Kappel cannot meet the high burden she bears of proving her fraud claim; language
contained in AEI's employee handbook, which was expressly part of Kappel's Employment
Letter, bars her claim to the Infinera warrants; Kappel cannot show that she justifiably
relied upon any alleged omissions of fact; and Kappel cannot meet her burden of proving
that AEI is liable to her under any theory of recovery.

## RELIEF REQUESTED

Claimant requested an award in the amount of:

| | |
|---|---|
| Actual/Compensatory Damages | $ 4,056.00 |
| Interest | Unspecified |
| Attorneys' Fees | Unspecified |
| Other Costs | Unspecified |
| Other Monetary Relief | Unspecified |

Respondent requested that the claims asserted against her be denied in their entirety.

In the Amended Counterclaim, Denise Kappel requested an award in the amount of:

| | |
|---|---|
| Actual/Compensatory Damages | $1,380,328.00 |
| Exemplary/Punitive Damages | $4,140,984.00 |
| Attorneys' Fees | Unspecified |

## OTHER ISSUES CONSIDERED & DECIDED

In its Order dated September 13, 2007, the Panel allowed Respondent until September 21,
2007 to file a Motion to Amend her Counterclaim and supporting Memorandum. The Panel
allowed Claimant until October 5, 2007 to respond.  No reply was scheduled.

In its Order dated October 12, 2007, the Panel granted Respondent's Motion to Amend her
Counterclaim.

During the hearing, the Panel denied Claimant's Motion for Directed Verdict on Sexual
Harassment Claim.

On or about March 12, 2008, the Panel issued an Order for the parties to submit Petitions
for Attorneys' fees within 7 days after their Order was sent to the parties.  The Panel
allowed for responses within seven days thereafter.

FINRA Dispute Resolution
Arbitration No. 06-01261
Award    Page 4 of 7

On or about March 18, 2008, Respondent filed a Memorandum in Support of her Request for Attorneys' fees. On or about March 20, 2008, Claimant advised that it would not file a response to Respondent's Memorandum.

On or about March 19, 2008, Claimant filed its Memorandum of Law Concerning Petition for Attorneys' fees. On or about March 19, 2008, Respondent advised that she would not file a response to Claimant's Memorandum.

The parties have agreed that the Award in this matter may be executed in counterpart copies or that a handwritten, signed Award may be entered.

## AWARD

After considering the pleadings, the testimony, the evidence presented at the hearing, and the post-hearing submissions, the Panel has decided in full and final resolution of the issues submitted for determination as follows:

1.)  Claimant's claims, each and all, are hereby denied and dismissed with prejudice;

2.)  Claimant, Advanced Equities, Inc., is liable for and shall pay to Respondent, Denise Kappel, the sum of $260,328.00 in compensatory damages for breach of employment agreement;

3.)  Claimant, Advanced Equities, Inc., is liable for and shall pay to Respondent, Denise Kappel, the sum of $200,000.00 compensatory and punitive damages under Title VII and pursuant to *MastroBuono v. Shearson Lehman Hutton, Inc,* 514 U.S. 52 (1995);

4.)  Claimant, Advanced Equities, Inc., is liable for and shall pay to Respondent, Denise Kappel, the sum of $80,000.00 in attorneys' fees pursuant to Title VII 42 U.S.C. Section 2000e-5(k);

5.)  Other than Forum Fees which are specified below, the parties shall each bear their own costs and expenses incurred in this matter; and

6.)  Any relief not specifically enumerated is hereby denied with prejudice.

## FEES

Pursuant to the Code, the following fees are assessed:

FINRA Dispute Resolution
Arbitration No. 06-01261
Award    Page 5 of 7

## Filing Fees

FINRA Dispute Resolution will retain the non-refundable filing fees for each claim:

| | | |
|---|---|---|
| Initial Claim filing fee | = $ | 200.00 |
| Counterclaim filing fee | = $ | 600.00 |

## Member Fees

Member fees are assessed to each member firm that is a party in these proceedings or to the member firm that employed the associated person at the time of the event giving rise to the dispute. In this matter, the member firm is Advanced Equities, Inc.

| | | |
|---|---|---|
| Member surcharge | = $ | 200.00 |
| Pre-hearing process fee | = $ | 5,500.00 |
| Hearing process fee | = $ | 750.00 |

## Adjournment Fees

Adjournments granted during these proceedings:

| | | |
|---|---|---|
| October 31 – November 1, 2007 and November 5 – 6, 2007, adjournment requested by Claimant | = $ | 750.00 |

## Forum Fees and Assessments

The Panel has assessed forum fees for each hearing session conducted or each decision rendered on a discovery-related motion on the papers or a contested motion for the issuance of a subpoena. A session is any meeting between the parties and the arbitrators, including a pre-hearing conference with the arbitrators, that lasts four (4) hours or less. Fees associated with these proceedings are:

| | | |
|---|---|---|
| One (1) Decision on a contested motion for the issuance of a subpoena with one (1) arbitrator @ $200.00 (maximum of $600) | = $ | 200.00 |
| One (1) Pre-hearing session with a single arbitrator x $450.00 Pre-hearing conference:    June 1, 2007    1 session | = $ | 450.00 |
| One (1) Pre-hearing session with Panel x $750.00 Pre-hearing conference:    January 30, 2007    1 session | = $ | 750.00 |
| One (1) Pre-hearing session with Panel x $1,200.00 Pre-hearing conference:    October 26, 2007    1 session | = $ | 1,200.00 |

FINRA Dispute Resolution
Arbitration No. 06-01261
Award    Page 6 of 7

| | | | |
|---|---|---|---|
| Four (4) Hearing sessions x $750.00 | | | = $  3,000.00 |
| Hearing Dates: | September 11, 2007 | 2 sessions | |
| | September 12, 2007 | 2 sessions | |
| | | | |
| Eleven (11) Hearing sessions x $1,200.00 | | | = $ 13,200.00 |
| Hearing Dates: | December 17, 2007 | 2 sessions | |
| | December 18, 2007 | 2 sessions | |
| | December 19, 2007 | 2 sessions | |
| | February 25, 2008 | 2 sessions | |
| | February 26, 2008 | 3 sessions | |
| Total Forum Fees | | | = $ 18,800.00 |

The Panel has assessed $18,800.00 of the forum fees to Advanced Equities, Inc.

## Administrative Costs

Administrative costs are expenses incurred due to a request by a party for special services beyond the normal administrative services. These include, but are not limited to, additional copies of arbitrator awards, copies of audio transcripts, retrieval of documents from archives, interpreters and security.

Advanced Equities, Inc., requested copies of audio tapes          = $     240.00

## FEE SUMMARY

Claimant, Advanced Equities, Inc., is liable for:

| | |
|---|---|
| Initial Filing Fee | = $     400.00 |
| Counterclaim Filing Fee | = $     400.00 |
| Member Fees | = $  6,450.00 |
| Adjournment Fee | = $     750.00 |
| Administrative Costs | = $     240.00 |
| Forum Fees | = $ 18,800.00 |
| Total Fees | = $ 27,040.00 |
| Less payments | = $  7,215.00 |
| Balance Due FINRA Dispute Resolution | = $ 19,825.00 |

Respondent, Denise Kappel, is liable for:

| | |
|---|---|
| Filing Fee | = $     200.00 |
| Total Fees | = $     200.00 |
| Less payments | = $     975.00 |
| Refund Due Respondent | = $     775.00 |

All balances are payable to FINRA Dispute Resolution and are due upon receipt.

FINRA Dispute Resolution
Arbitration No. 06-01261
Award    Page 7 of 7

## ARBITRATION PANEL

Champ W, Davis, Jr. - Public Arbitrator, Presiding Chair
Ann Breen-Greco - Public Arbitrator
Thomas F, Mahoney - Public Arbitrator

Concurring Arbitrators' Signatures:

/s/ Cham W. Davis, Jr.                          April 4, 2008
Champ W. Davis, Jr.                             Signature Date
Public Arbitrator, Presiding Chair

/s/ Ann Breen-Greco                             April 4, 2008
Ann Breen-Greco                                 Signature Date
Public Arbitrator

/s/ Thomas F. Mahoney                           April 4, 2008
Thomas F. Mahoney                               Signature Date
Public Arbitrator

April 7, 2008
Date of Service  (For FINRA office use only)

FINRA Dispute Resolution
Arbitration No. 06-01261
Award    Page 7 of 7

## ARBITRATION PANEL

Champ W. Davis, Jr. - Public Arbitrator, Presiding Chair
Ann Breen-Greco - Public Arbitrator
Thomas F. Mahoney - Public Arbitrator

Concurring Arbitrators' Signatures:

_Champ W. Davis_                          _April 4, 2008_
Champ W. Davis, Jr.                        Signature Date
Public Arbitrator, Presiding Chair


Ann Breen-Greco                           Signature Date
Public Arbitrator


Thomas F. Mahoney                         Signature Date
Public Arbitrator


Date of Service  (For FINRA office use only)

FINRA Dispute Resolution
Arbitration No. 06-01991
Award    Page 7 of 7

## ARBITRATION PANEL

Champ W. Davis, Jr. - Public Arbitrator, Presiding Chair
Ann Breen-Greco - Public Arbitrator
Thomas F. Mahoney - Public Arbitrator

Concurring Arbitrators' Signatures:

_____          _____
Champ W. Davis, Jr.                       Signature Date
Public Arbitrator, Presiding Chair

_____          _____
Ann Breen-Greco                           4/4/08
Public Arbitrator                         Signature Date

_____          _____
Thomas F. Mahoney                         Signature Date
Public Arbitrator

_____
Date of Service  (For FINRA office use only)

FINRA Dispute Resolution
Arbitration No. 06-01281
Award    Page 7 of 7

## ARBITRATION PANEL

Champ W. Davis, Jr. - Public Arbitrator, Presiding Chair
Ann Breen-Greco - Public Arbitrator
Thomas F. Mahoney - Public Arbitrator

Concurring Arbitrators' Signatures!

_____          _____
Champ W. Davis, Jr.                        Signature Date
Public Arbitrator, Presiding Chair


_____          _____
Ann Breen-Greco                            Signature Date
Public Arbitrator

_Thomas F. Mahoney_                        _4 April 2008_
Thomas F. Mahoney                          Signature Date
Public Arbitrator


_____
Date of Service  (For FINRA office use only)

04/07/2008 16:46 FAX   312 899 4407     N A S D      ☑001/014



**FINRA**
Financial Industry Regulatory Authority

To: _Nicholas P. Ivarone_   Fax: _800-417-0580_

. To: _____   Fax: _____

To: _Andrew Zuck_   Fax: _248-928-9001_

. To: _____   Fax: _____

To: _Alan F. Block_   Fax: _251-1147_

. To: _____   Fax: _____

To: _____   Fax: _____

. To: _____   Fax: _____

To: _____   Fax: _____

# Pages Including Cover _____

Case Number _06-1261_

This fax transmittal is strictly confidential and is intended solely for the person or organization to whom it is addressed. If you have not received all pages of this fax please call 312 899 4440.

55 W. Monroe Street
Suite 2600
Chicago, IL 60603

tel 312-899-4440
fax 312-236-9239
www.finra.org

# EXHIBIT B

UPFRONT COMMISSIONS

$3,905,000 x .05 = $195,250

ACCORDING TO AEI PHANTOM GRID

$3,905,000 X .015 = $58,575

ACCORDING TO CONTRACT

$3,905,000 x .025 = $97,625

OWED DENISE

$39,050

---

INFINERA WARRANTS DIRECT INVESTMENTS

$5.40 STRIKE PRICE

AT 1.5% ($ 58,575/ $5.40) = 10,847 WARRANTS

11,389 x $24 = $260,328

AT 2.5% ($97,625 / $5.40) = 18,079 WARRANTS

18,079 x $24 = $433,896

---

UPFRONT COMMISSIONS

$1,000,000 x .025 = $25,000

ACCORDING TO AEI PHANTOM GRID

$1,000,000 X .015 = $15,000

ACCORDING TO CONTRACT

$1,000,000 x .025 = $25,000

---

$1,000,000 PROCURING SALE

AT 1.5% ($15,000 / $5.40 = 2,778 WARRANTS)

2,778 x $24 = $66,672

AT 2.5% ($25,000 / $5.40 = 4,630 WARRANTS

4,630 X 24 = $111,120

1

| ORIGINAL | SALE |
|---|---|
| AT 1.5% | |
| COMPENSATORY DAMAGES | 261,083 |
| PUNITIVE DAMAGES | 783,249 |
| | 1,044,332 |
| AT 2.5% | |
| COMPENSATORY DAMAGES | 473,696 |
| PUNITIVE DAMAGES | 1,421,088 |
| | 1,894,784 |

| PROCURING $1,000,000 SALE | |
|---|---|
| AT 1.5% | |
| COMPENSATORY DAMAGES | 82,666 |
| PUNITIVE DAMAGES | 247,998 |
| | 330,664 |
| AT 2.5% | |
| COMPENSATORY DAMAGES | 136,000 |
| PUNITIVE DAMAGES | 408,000 |
| | 544,000 |

**Total Due Violation of Hostile Workplace Claim**

**$200,000 Based on Number of Employees**

**Being between 200 -300**

**This Includes Punitive Damages for This Particular Claim**

**Costs**

**Transcripts = $2,610**

**Expert = $7,800**

**Total = $10,410**

**REASONABLE ATTORNEY'S FEES**

2

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DENISE KAPPEL,

              Movant,

       v.

ADVANCED EQUITIES, INC.,

              Respondent.

No.:  08 CV 1991

JUDGE LEINENWEBER

MAGISTRATE JUDGE ASHMAN

## DECLARATION OF RHONDA DIXON

Rhonda Dixon certifies and affirms as follows:

      1.    I am over twenty-one years of age, have personal knowledge of the facts stated in this declaration and I could testify to those facts under oath if required to do so.

      2.    I am the payroll manager for Advanced Equities Financial Corporation ("AEFC").

      3.    AEFC is the parent company for Respondent, Advanced Equities, Inc. ("AEI").

      4.    Between January 1, 2005 and January 1, 2007, AEI never employed more than 95 employees.

      5.    At no time has AEI ever employed over 200 employees.

      6.    I swear under penalty of perjury that the foregoing statements in this Declaration are true and correct.

Further Declarant Sayeth Not.

_Rhonda Dixon_
Rhonda Dixon

# EXHIBIT D

IN ARBITRATION BEFORE THE
FINANCIAL INDUSTRY REGULATORY AUTHORITY

ADVANCED EQUITIES, INC.,                    )
                                            )
        Claimant, Counter-Respondent,       )
                                            )       Case No. 06-01261
v.                                          )
                                            )
DENISE KAPPEL,                              )
                                            )
        Respondent, Counter-Claimant.       )

RESPONDENT DENISE KAPPEL'S MEMORANDUM IN
SUPPORT OF HER REQUEST FOR ATTORNEYS' FEES.

NOW COMES Respondent, Denise Kappel, by and through her undersigned counsel, and

in support of her request for an award of attorneys' fees states as follows:

THIS PANEL HAS BROAD DISCRETION TO AWARD ATTORNEYS' FEES

According to the United States Supreme Court an arbitration panel has broad discretion

under the Federal Arbitration Act, 9 U.S.C. §1, et seq., to award "damages and other relief".

Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 61 (1995).  The focus in

Mastrobuono, was whether an arbitration panel has the authority to award punitive damages. 514

U.S. at 54.  In noting that NASD rules allow for the award of "damages and other relief", the

Supreme Court concluded that the standard arbitration agreement utilized in the brokerage

industry supports the award of punitive damages.

Numerous courts have followed the decision in Mastrabuono to support an arbitration

panel's authority to award attorneys' fees.  See, e.g., Bailiwick v. Patterson Travis, Inc., 201

U.S. Dist. LEXIS 3783 (N.D. Ill 2001). The Court in Bailiwick stated that "[i]t is commonplace

to leave the arbitrators pretty much at large in the formulation of remedies . . .". Id. at *4

(internal citations omitted).  The District Court then confirmed that the award of attorneys' fees

1

was appropriate under the NASD's rules:

> In this case, the parties have, explicitly or implicitly, agreed to be bound by the NASD Arbitration.  The NASD Code of Arbitration Procedure provides that arbitrators may award "damages and other relief." *See* NASD Code of Arbitration Procedure § 3741(e). The Court is satisfied that this provision is broad enough to allow an arbitrator to command a respondent to pay a co-respondent's legal fees.

Id. at 6 (*citing* Mastrabuono).

Other courts have reached the same conclusion.  See, e.g., Paine Webber, Inc. v. Bybyk,

81 F.3d 1193, 1200 (2nd Cir. 1996) (Federal Arbitration Act authorizes panel to decide issues of

timeliness and attorneys' fees);  Intercity Co. Establishment v. Ahto, 13 F.Supp.2d 253, 264 ( D.

Conn. 1998) ("Absent a provision in the arbitration agreement foreclosing attorney's fees as a

remedy, respondents were not precluded from seeking fees and there was nothing  improper in

their award."); and in Mutual Service Corp. v. Spaulding, 972 F.Supp.1126, 1127 (N.D. Ill.

1997), the Court stated:

> Here, prior to the arbitration proceedings the parties signed a "Uniform Submission Agreement." The agreement states that the parties "understand that the arbitration will be conducted in accordance with the Constitution, By-Laws, Rules, Regulations and/or NASD Code of Arbitration Procedure." There is a provision in the NASD Code of Arbitration Procedure which provides that the arbitrators may award "damages and other relief." *See* NASD Code of Arbitration Procedure § 3741(e). The Supreme Court found that the provision was broad enough to include an award of punitive damages. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 115 S. Ct. 1212, 1218, 131 L. Ed. 2d 76 (1995) ("While not a clear authorization of punitive damages, this provision appears broad enough at least to contemplate such a remedy."). Similarly, the Court concludes that the phrase "other relief" is broad enough to include an award of attorneys' fees.

Advanced Equities initiated the instant arbitration against Denise Kappel.  As in Mutual Service,

both parties had to execute a Uniform Submission Agreement.  Therefore, under Mutual Service

and the other cases cited above, this Panel has the authority to award attorneys' fees.

2

Additional authority for this Panel to award attorneys' fees is found in the federal statutes. Title VII allows for the award of attorneys' fees in sexual harassment or discrimination claims. "In any action or proceeding under this title [42 USCS §§ 2000e, et seq.] the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person." 42 U.S.C. § 2000e-5(k).

As such, this Panel has multiple basises on which to award attorneys' fees to Denise Kappel.

**RESPONDENT RETAINED HER ATTORNEYS ON A CONTINGENCY BASIS.**

Denise Kappel retained her counsel on a contingency basis, plus expenses. Specifically, Denise agreed to compensate her attorneys on a 40% contingency. That fee shall be divided between her current counsel and her prior counsel, John Ostojic.

## CONCLUSION

For the reasons set forth herein, Denise Kappel respectfully requests that this Panel grant her attorneys' fees in the amount equal to forty (40%) per cent of any award entered in this matter, or any amount this Panel deems reasonable, plus expenses, forum fees, and any other relief the Panel deems just and fair.

3

--

March 18, 2008                          Respectfully submitted,

                                        By: _____
                                            One of Respondent's Attorneys


Nicholas P. Iavarone, Esq.              Alan F. Block, Esq
The Iavarone Law Firm                   Block & Landsman
11 S. LaSalle Street, Suite 1600        11 S. LaSalle Street, Suite 1600
Chicago, Illinois 60603                 Chicago, Illinois 60603
(312) 239-8830                          (312) 251-1144
(866) 554-8350 (fax)                    (312) 251-1147 (fax)


                                   4                    --

IN ARBITRATION BEFORE THE
FINANCIAL INDUSTRY REGULATORY AUTHORITY

| | | |
|---|---|---|
| ADVANCED EQUITIES, INC., | ) | |
| | ) | |
| Claimant/Counter-Respondent, | ) | |
| | ) | |
| v. | ) | NASD Case No. 06-01261 |
| | ) | |
| DENISE KAPPEL, | ) | |
| | ) | |
| Respondent/Counter-Claimant. | ) | |

---

### Claimant Advanced Equities, Inc.'s Memorandum of Law Concerning Petition for Attorneys' Fees

This Panel has inquired as to whether Claimant/Counter-Respondent, ADVANCED EQUITIES, INC. ("AEI"), seeks an award of attorneys' fees. AEI seeks an award of its attorneys' fees and costs relating to defending against Respondent/Counter-Claimant Denise Kappel's ("Kappel") claims for sexual harassment and sex discrimination that she brought under Title VII of the Civil Rights Act.

It is well established that attorneys' fees may be awarded to a defendant who is the prevailing party in a case under Title VII if the court or arbitration panel finds that the plaintiff's action was "frivolous, unreasonable or groundless, or that the plaintiff continued to litigate after it clearly became so." Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422 (1978). Accord, Monroe v. Children's Home Association, 128 F.3d 591, 594 (7th Cir. 1997). Moreover, in awarding such fees, a court or an arbitration panel need not find that the plaintiff brought the action in bad faith. Christiansburg, supra, 434 U.S. at 421.

AEI believes that this Panel should find that Kappel's claims for sexual harassment and sex discrimination brought under Title VII of the Civil Rights Act were "frivolous, unreasonable or groundless" and Claimant is accordingly entitled to an award of attorneys' fees and costs relating to defending against those claims.   If this Panel makes such a finding, AEI would then submit a petition for attorneys' fees and costs for this Panel's review.

Respectfully submitted,

MUNRO AND ZACK, P.C.

By:

ANDREW J. MUNRO
ANDREW M. ZACK
Attorneys for AEI

Dated: March 19, 2008

2

# EXHIBIT E

222762

```
 1          MR. MUNRO:  Excuse me.  Excuse me, sir.
 2          MR. IAVARONE:  You can't do that.
 3          ARBITRATOR:  Wait.  I was -- I was taking a
 4    note.
 5          MR. IAVARONE:  You have to instruct him he
 6    cannot whisper to the witness.
 7          THE WITNESS:  There was no whispering to the
 8    witness.
 9          MR. IAVARONE:  Yes, there was.
10          THE WITNESS:  He didn't say a word.
11          ARBITRATOR:  We're here to hear the witness's
12    testimony.
13    BY MR. IAVARONE:
14          Q.   When were the warrants distributed?
15          A.   I'd just like to make a point.  You
16    called my firm a charade.  You -- you make personal
17    insults and innuendo.
18          ARBITRATOR:  Let's move on.  Let's stop the
19    personal stuff.
20          THE WITNESS:  Well, I wish you would.  I wish
21    Mr. Iavarone would --
22          ARBITRATOR:  Both sides.  Everybody just stop
23    the personal stuff.
24
0007
 1    BY MR. IAVARONE:
 2          Q.   When did you exercise the --
 3          A.   I don't know what day they were
 4    exercised.
 5          Q.   Tell us -- and so the brokers got
 6    warrants or stock?
 7          A.   I believe that the brokers were actually
 8    the -- there was an exercise, and I believe the
 9    warrants that were entitled were exercised and the
10    brokers were notified and given cash.
11          Q.   Why?
12          A.   To basically eliminate the issue of front
13    running, so the brokers knew that they had the
14    stock, okay, that the stock had been sold, that they
15    had cash.  And then if they wanted to go back in the
16    market and buy those securities, they had full
17    knowledge, and they could go back and buy the stock
18    back.
19          Q.   Did you take out -- now, the warrants, if
20    you give it to them, what's the tax consequences of
21    giving warrants?
22          A.   I'm -- I'm not a tax expert, sir.
23          Q.   Did you -- did you exercise the warrants
24    at the price of $20 a share that they were trading
0008
 1    at on December 5th?
 2          A.   I don't believe that was the exercise
 3    price.
 4          Q.   What was the exercise price?
 5          A.   I believe it was $5.40.
 6          Q.   And what price did you give the brokers?
 7          A.   I don't know.
 8          Q.   $12 or something?
 9          A.   I just told you for the second time, I
10    don't know.  I didn't do it.
11          Q.   Who -- you have no idea of what it -- of
12    what they were paid?
13          A.   I didn't -- I didn't have any warrants
```

Page 3

# EXHIBIT F

Ex 2b


Yahoo!   My Yahoo!   Mail    Search: [         ]    **Web Search**

 **FINANCE**

Welcome, nick_glenview
[Sign Out, My Account]
Finance Home - Help

**EDGAR**Online

Dow ↑ 1.53%   Nasdaq ↑ 1.05%      Mon, Feb 25, 2008, 8:46PM ET - **U.S. Markets closed.**

---

[     **GET QUOTES**     ]    Finance Search

## Infinera Corp. (INFN)

At 4:00PM ET: **13.57** ↑ 0.61 (4.71%)

**$0** Stock Trades **zecco.com**    **$0 Stock Trades at Zecco**
· **Looking for a better online broker?**
· **Let's talk.**

### Insider Transactions

Get **Insider Transactions** for: [     ] **GO**

**NET SHARE PURCHASE ACTIVITY**

**Insider Purchases** - Last 6 Months

| | Shares | Trans |
|---|---|---|
| Purchases | N/A | 0 |
| Sales | 455,711 | 17 |
| Net Shares Purchased (Sold) | (455,711) | 17 |
| Total Insider Shares Held | 129.84K | N/A |
| % Net Shares Purchased (Sold) | (77.8%) | N/A |

ADVERTISEMENT

THIS IS MY KIND OF UNIVERSITY
THIS IS A...
AMERICAN INTERCONTINENTAL UNIVERSITY
LEARN MORE!

**Net Institutional Purchases** - Prior Qtr to Latest Qtr

| | Shares |
|---|---|
| Net Shares Purchased (Sold) | 15,306,800 |
| % Change in Institutional Shares Held | 28.2% |

Data provided by Thomson Financial

**INSIDER TRANSACTIONS REPORTED - LAST TWO YEARS**

| Date | Insider | Shares | Type | Transaction | Value* |
|---|---|---|---|---|---|
| 20-Feb-08 | MCCARTHY MICHAEL O III<br>Officer | 2,057 | Direct | Automatic Sale at $12.89 - $12.93 per share. | $27,000[2] |
| 19-Feb-08 | SINGH JAGDEEP<br>Officer | 16,000 | Indirect | Automatic Sale at $13.07 per share. | $209,120 |
| 11-Feb-08 | CHANDLER SCOTT A<br>Officer | 3,345 | Direct | Option Exercise at $0.76 - $2.24 per share. | N/A |
| 11-Feb-08 | CHANDLER SCOTT A<br>Officer | 3,345 | Direct | Automatic Sale at $12.15 - $12.16 per share. | $41,000[2] |
| 8-Jan-08 | SINGH JAGDEEP<br>Officer | 16,000 | Indirect | Automatic Sale at $10.85 per share. | $173,600 |
| 3-Jan-08 | SINGH JAGDEEP<br>Officer | 3,106 | Indirect | Automatic Sale at $13.56 - $14.19 per share. | $43,000[2] |

| Date | Name | Shares | Type | Transaction | Value |
|---|---|---|---|---|---|
| 3-Jan-08 | SINGH JAGDEEP<br>Officer | 8,194 | Indirect | Automatic Sale at $13.16 - $13.55 per share. | $109,000[2] |
| 3-Jan-08 | SINGH JAGDEEP<br>Officer | 4,700 | Indirect | Automatic Sale at $12.51 - $13.15 per share. | $60,000[2] |
| 2-Jan-08 | MCCARTHY MICHAEL O III<br>Officer | 33,518 | Direct | Automatic Sale at $15.04 - $15.2 per share. | $507,000[2] |
| 2-Jan-08 | CHANDLER SCOTT A<br>Officer | 50,848 | Direct | Option Exercise at $0.76 - $13 per share. | N/A |
| 2-Jan-08 | CHANDLER SCOTT A<br>Officer | 50,848 | Direct | Automatic Sale at $14.61 - $15.2 per share. | $758,000[2] |
| 31-Dec-07 | CUMPSTON WILLIAM R<br>Officer | 5,000 | Direct | Option Exercise at $2 per share. | $10,000 |
| 31-Dec-07 | CUMPSTON WILLIAM R<br>Officer | 5,000 | Direct | Automatic Sale at $15 per share. | $75,000 |
| 27-Dec-07 | SINGH JAGDEEP<br>Officer | 500 | Indirect | Automatic Sale at $14.37 - $14.42 per share. | $7,197[2] |
| 27-Dec-07 | SINGH JAGDEEP<br>Officer | 15,500 | Indirect | Automatic Sale at $14.03 - $14.36 per share. | $220,000[2] |
| 19-Dec-07 | SINGH JAGDEEP<br>Officer | 2,600 | Indirect | Automatic Sale at $16.64 - $16.7 per share. | $43,000[2] |
| 19-Dec-07 | SINGH JAGDEEP<br>Officer | 13,400 | Indirect | Automatic Sale at $16.28 - $16.61 per share. | $220,000[2] |
| 17-Dec-07 | CUMPSTON WILLIAM R<br>Officer | 2,500 | Direct | Option Exercise at $2 per share. | $5,000 |
| 17-Dec-07 | CUMPSTON WILLIAM R<br>Officer | 2,500 | Direct | Automatic Sale at $16.77 - $16.97 per share. | $42,000[2] |
| 11-Dec-07 | MCCARTHY MICHAEL O III<br>Officer | 10,000 | Direct | Automatic Sale at $19.15 - $19.3 per share. | $192,000[2] |
| 10-Dec-07 | MCCARTHY MICHAEL O III<br>Officer | 20,000 | Direct | Automatic Sale at $18.85 - $19.34 per share. | $382,000[2] |
| 10-Dec-07 | CUMPSTON WILLIAM R<br>Officer | 2,500 | Direct | Option Exercise at $2 per share. | $5,000 |
| 10-Dec-07 | CUMPSTON WILLIAM R<br>Officer | 2,500 | Direct | Automatic Sale at $18.80 - $19.31 per share. | $48,000[2] |
| 5-Dec-07 | CHANDLER SCOTT A<br>Officer | 40,000 | Direct | Option Exercise at $1.32 - $2 per share. | N/A |
| 5-Dec-07 | CHANDLER SCOTT A<br>Officer | 40,000 | Direct | Automatic Sale at $19.75 per share. | $790,000 |
| 5-Dec-07 | CUMPSTON WILLIAM R<br>Officer | 10,500 | Direct | Option Exercise at $2 per share. | $21,000 |
| 5-Dec-07 | CUMPSTON WILLIAM R<br>Officer | 10,500 | Direct | Automatic Sale at $19.23 - $20 per share. | $206,000[2] |

| 4-Dec-07 | CHANDLER SCOTT A<br>Officer | 50,000 | Direct | Option Exercise at $0.76 - $1.32 per share. | N/A |
|---|---|---|---|---|---|
| 4-Dec-07 | CHANDLER SCOTT A<br>Officer | 50,000 | Direct | Automatic Sale at $19.78 - $19.78 per share. | $989,000[2] |
| 4-Dec-07 | SINGH JAGDEEP<br>Officer | 5,200 | Indirect | Automatic Sale at $19.85 - $20.15 per share. | $104,000[2] |
| 4-Dec-07 | SINGH JAGDEEP<br>Officer | 10,800 | Indirect | Automatic Sale at $19.21 - $19.85 per share. | $211,000[2] |
| 4-Dec-07 | GOLDMAN KENNETH A<br>Director | 5,000 | Direct | Automatic Sale at $19.35 - $19.89 per share. | $98,000[2] |
| 4-Dec-07 | WELCH DAVID F<br>Officer | 17,500 | Indirect | Automatic Sale at $19.30 - $20 per share. | $344,000[2] |
| 3-Dec-07 | WELCH DAVID F<br>Officer | 6,394 | Indirect | Acquisition (Non Open Market) at $0 per share. | N/A |
| 3-Dec-07 | WELCH DAVID F<br>Officer | 867 | Indirect | Acquisition (Non Open Market) at $0 per share. | N/A |
| 5-Nov-07 | FALLON THOMAS J<br>Officer | 125,000 | Indirect | Sale at $20.96 - $21 per share. | $2,623,000[2] |
| 12-Jun-07 | REDFIELD CARL<br>Director | 67,934 | Indirect | Acquisition (Non Open Market) | N/A |
| 12-Jun-07 | BALKANSKI ALEXANDRE<br>Director | 2,615,263 | Indirect | Acquisition (Non Open Market) | N/A |
| 12-Jun-07 | GOLDMAN KENNETH A<br>Director | 18,518 | Indirect | Acquisition (Non Open Market) | N/A |
| 12-Jun-07 | SINGH JAGDEEP<br>Officer | 21,520 | Direct | Acquisition (Non Open Market) | N/A |
| 12-Jun-07 | SINGH JAGDEEP<br>Officer | 1,221,624 | Indirect | Acquisition (Non Open Market) | N/A |
| 12-Jun-07 | FALLON THOMAS J<br>Officer | 125,000 | Indirect | Acquisition (Non Open Market) | N/A |
| 12-Jun-07 | WELCH DAVID F<br>Officer | 1,230,639 | Indirect | Acquisition (Non Open Market) | N/A |
| 12-Jun-07 | MCCARTHY MICHAEL O III<br>Officer | 18,518 | Direct | Acquisition (Non Open Market) | N/A |
| 12-Jun-07 | MARTIN HUGH C<br>Director | 46,296 | Indirect | Acquisition (Non Open Market) | N/A |
| 6-Jun-07 | SINGH JAGDEEP<br>Officer | 581,250 | Indirect | Statement of Ownership | N/A |
| 6-Jun-07 | SINGH JAGDEEP<br>Officer | 449,999 | Direct | Statement of Ownership | N/A |
| 6-Jun-07 | WILLIAMS DUSTON<br>Officer | 125,000 | Direct | Statement of Ownership | N/A |
| 6-Jun-07 | GOLDMAN KENNETH A<br>Director | 50,000 | Direct | Statement of Ownership | N/A |
| 6-Jun-07 | BALKANSKI ALEXANDRE<br>Director | 42,500 | Indirect | Statement of Ownership | N/A |

# EXHIBIT G



INFINERA CORPORATION -SI

**Jun 22, 2005**
FINDER AGREEMENT
Executed between Infinera Corp. and Advanced Equities, Inc. providing for Cash Placement Fee of 5% and Warrant Placement Fee.

**Aug 8, 2005**
PRIVATE PLACEMENT MEMORANDUM
PPM issued for $20,000,000 of Series G Preferred Stock

**Oct 7, 2005**
First Closing, Kappel sells $2,355,000 of Infinera Series G Preferred Stock

**Nov 17, 2005**
STOCK WARRANT
Stock Warrant issued to Advanced Equities, Inc. by Infinera Corporation for 962,553 shares of Series G Preferred Stock at $1.35 per share, which is equivalent to $5.40 per share at IPO (adjusted for reverse split)

**Nov 17, 2005**
Second Closing, Kappel sells $1,500,000 of Infinera Series G Preferred Stock

**Sep 12, 2005 to Mar 7, 2006**
Kappel's term of employment with Advanced Equities, Inc.

Jun 2005 | Jul 2005 | Aug 2005 | Sep 2005 | Oct 2005 | Nov 2005 | Dec 2005 | Jan 2006 | Feb 2006 | Mar 2006 | Apr 2006 | May 2006 | Jun 2006 | Jul 2006 | Aug 2006 | Sep 2006 | Oct 200

# GNIFICANT EVENT TIMELINE

**Jan 10, 2007**

**LOCK-UP AGREEMENT**

Lock-up Agreement executed between Advanced Equities, Inc. and Infinera's underwriters. Lock up period is for 180 days beginning after the IPO date and covers Advanced Equities, Inc.'s warrant(s).

**Jun 12, 2007**

**LIQUIDITY EVENT**

Infinera Corporation goes public at $13 per share, raising over $209,000,000

**Jun 12, 2007 to Dec 11, 2007**

Advanced Equities, Inc.'s Lock-Up period ends on Sunday, December 10, 2007. First business day to exercise Warrant is Monday, December 11, 2007.

**Dec 11, 2007**

First date that Warrant can be exercised by Advanced Equities, Inc.

Closing Price of Infinera Corp.'s stock:

- Monday, 12/10/2007    $18.84
- Tuesday, 12/11/2007    $18.95
- Wednesday, 12/12/2007   $18.25
- Thursday, 12/13/2007    $17.49
- Friday, 12/14/2007    $16.95

Nov 2006 | Dec 2006 | Jan 2007 | Feb 2007 | Mar 2007 | Apr 2007 | May 2007 | Jun 2007 | Jul 2007 | Aug 2007 | Sep 2007 | Oct 2007 | Nov 2007 | Dec 2007



INFINERA CORPORATION
as of 12/14/2007