# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISCTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| DENISE KAPPEL, ) | |
| ) | |
| **Movant** ) | |
| ) | **Case No. 08 CV 1991** |
| v. ) | **Judge Leinenweber** |
| ) | **Magistrate Judge Ashman** |
| ADVANCED EQUITIES, INC, ) | |
| ) | |
| **Respondent** ) | |

## MOTION FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927

NOW COMES Movant, Denise Kappel, by and through her undersigned attorney, and, pursuant to 28 U.S.C. § 1927, moves this Court to impose monetary sanctions on Respondent, stating as follows:

1.  The Opposition and Counter-Petition filed by Respondent "multiplies the proceedings in any case unreasonably and vexatiously" within the meaning of 28 U.S.C. § 1927. The Respondent's contentions are disingenuous in so many aspects as to be truly shocking. Not only does the Respondent argue the evidence, the Respondent *purposefully misstates* the evidence. Even worse, the Respondent elected not to transcribe the arbitration tapes that contain the testimony which support the award and then argues that no evidence exists in the *selective* record.

2.  The law regarding review of arbitration awards in this Circuit is well settled:

> Our scope of review of a commercial arbitration award is grudgingly narrow. Sections 10 and 11 of the Federal Arbitration Act provide statutory grounds for the modification of an arbitrator's decision. In addition to the reasons set out in the statute, we will set aside an arbitrator's decision if in reaching his result, the arbitrator deliberately disregards what he knows to be the law. Health Servs. Mgmt. Corp. v. Hughes, 975 F.2d 1253, 1267 (7th Cir.1992). *Errors in the arbitrator's*

>   *interpretation of law or findings of fact do not merit reversal under this standard.* National Wrecking Co. v. International Brotherhood of Teamsters, Local 731, 990 F.2d 957 (7th Cir.1993); Moseley, Hallgarten, Estabrook, & Weeden v. Ellis, 849 F.2d 264 (7th Cir.1988). *Nor does an insufficiency of evidence supporting the decision permit us to disturb the arbitrator's order.* Arbitration does not provide a system of "junior varsity trial courts" offering the losing party complete and rigorous *de novo* review. National Wrecking, 990 F.2d at 960.

Eljer Mfg., Inc. v. Kowin Development Corp., 14 F.3d 12501254-55 (7th Cir. 1994) *cert den* 512 U.S. 1205 (emphasis supplied) (footnote omitted). As the Seventh Circuit has also stated,"neither error nor clear error nor even gross error is a ground for vacating an award." IDS Life Ins. Co. v. Royal Alliance Assocs., Inc., 266 F.3d 645, 650 (7th Cir. 2001). As this Court stated in Vita Food Products, Inc. v. Sklar, 1995 WL 360696 (N.D. Ill. 1995), "Any 'colorable justification' will support a arbitral award." First Interregional Equity Corp. v. Haughton, 842 F. Supp. 105, 108 (S.D.N.Y. 1994) (citation omitted) . . ." Vita Food Products, Inc. at *7.

　　　　3.　　Respondent first alleges there is *insufficient* evidence in the record to establish that Respondent had between the 200-300 employees necessary to support the $200,000 compensatory and punitive damage award for violation of 42 U.S.C. § 1981a(b)(3) and not that the Panel purposefully ignored uncontradicted evidence or knowingly failed to apply the law.

　　　　4.　　Respondent then impermissibly attempts to introduce evidence to this Court that was never presented to the Panel. Respondent's attempt to introduce such evidence is impermissible. *See* Exhibit "C" of Respondent's Exhibits. As stated in Metro Tech Services Corp. v. Payless Shoes Source, Inc., 2007 WL 2003039 (N.D.Ill 2007).

>   In order to establish a material miscalculation in the Award, Payless would need to submit evidence outside of the arbitration record. A federal court's role in reviewing an arbitration award is a summary one. *See* Menke, 17

> F.3d at 1009 (7th Cir.1994) ("[A]n action for confirmation under 9 U.S.C. § 9 is intended to be a summary proceeding that merely makes the arbitrators' award a final, enforceable judgment of the court"). If a party were entitled to present additional evidence-evidence that was available at the time of the arbitration-to collaterally attack an arbitration award, there would be little incentive to pursue fully its case before the arbitrator. In this way, the FAA's requirement that the miscalculation or mistake be "evident" conforms with the underlying goals of arbitration-efficiency and finality. *See National Wrecking Co. v. International Broth. of Teamsters, Local 731*, 990 F.2d 957, 960 (7th Cir.1993) ("Judicial review of arbitration awards is narrow because arbitration is intended to be the final resolution of disputes").

*Id*. at *9-10.

5.  Even worse, Respondent purposefully ignores that Dwight Badger ("Badger"), *the chief executive officer* of Respondent, when asked who drafted the employment agreement at issue in the arbitration, testified that the Respondent had *300 plus employees*:

| | | |
|---|---|---|
| 23 | Q | Who drafted this? |
| 24 | A | I don't know who drafted it. |
| 1 | Q | What -- well, you read it. |
| 2 | A | I don't know who drafted it. *Look, I* |
| 3 | | *got an organization where I've got 400* -- |
| 4 | | *roughly* -- |
| 5 | Q | You have a record -- |
| 6 | A | -- *300 plus employees*. |

P. 207-08 (emphasis supplied).

6.  The testimony of Keith Daubenspeck ("Daubenspeck"), the Chairman of Respondent's board of directors, in which he testified that he agreed with Badger's testimony as to the number of Respondent's employees was either not transcribed or the Respondent elected to conceal it from this Court.[1]

7.  Respondent also elected not to transcribe the portion of the closing

---

[1] The Movant has ordered the entire tapes of Daubenspeck's testimony and the entire closing argument.

3

argument where the undersigned attorney argued at *length* that, based on Badger and Daubenspeck's testimony, the *undisputed evidence* proved that Respondent had between 200 and 300 employees and then requested the statutory maximum $200,000 in compensatory and punitive damages. Indeed, Respondent attaches as part of Exhibit "B" (at p.2) a copy of one of the slides used by the undersigned attorney *during closing argument* which was based on the testimony of Badger and Daubenspech. Respondent's attorney's *never objected to the argument..*[2]

8. However, even if the facts somehow resembled those alleged by Respondent in its Opposition, the law in this Circuit is clear:

> We will not set aside an arbitrator's award for factual or legal errors, as long as the award contains the honest decision of the arbitrator after a full and fair hearing of the parties. Ethyl Corp. v. United Steelworkers of America, 768 F.2d 180, 183 (7th Cir.1985), *cert. denied,* 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 300 (1986).

National Wrecking Co. v. International Brotherhood of Teamsters, Local 731, 990 F.2d 957, 960 (7th Cir.1993). The Seventh Circuit has further stated:

> Federal courts will not vacate an arbitration award merely because the arbitrator misinterpreted applicable law. National R.R. Passenger Corp. v. Chesapeake and Ohio Ry. Co., 551 F.2d 136, 143 (7th Cir.1977). *See also* Northrop Corp. v. Triad Int'l Marketing S.A., 811 F.2d 1265, 1268-69 (9th Cir.) (courts are bound to enforce an award based upon arbitrator's resolution of disputed issues even in the face of erroneous findings of fact or misinterpretations of law), *cert. denied,* 484 U.S. 914, 108 S.Ct. 261, 98 L.Ed.2d 219 (1987).

*Id.* at 961.

9. Respondent's argument concerning the compensatory damages for breach of contract is equally distressing and sanctionable.

---

[2] If in fact, Respondent had less than 300 employees during the relevant time-period, then Respondent's remedy is to file a malpractice claim against its trial attorneys and not seek to overturn an award through knowing half-truths and omissions.

10. 9 U.S.C. § 11a provides that a district court may modify an award only "Where there was an *evident* material miscalculation of figures . . . in the award." Emphasis supplied. The Respondent cites two district court cases both of which, unlike the case at bar, involve awards that contain specific calculations of damages. The Award at issue here contains *no such calculations* as to how the Panel arrived at its damage amount for the breach of contract claim.[3] Exhibit "B" to the Respondent's Opposition (at p.1) shows unequivocally that Movant was seeking $39,050 in *cash* as part of her damages. The Award does not states whether the damages are a combination of the cash and warrants requested or only the warrants or the number of warrants.[4]

11. The law does not permit Respondent to speculate as to the Arbitration Panel's reasoning. *See,* Williams v. Katten, Muchin & Zavis, 1996 WL 717477 (N.D.Ill. 1996), where the Court stated, that under the Arbitration Act:

> [I]t is not this Court's responsibility to review evidentiary-based challenges or to speculate as to the arbitrators' reasoning for its award of damages. *See* Gingiss Int'l, 58 F.3d at 333. Assessing damages was the job of the arbitration panel.

*Id*. at *6.

12. 9 U.S.C. § 11a only comes into consideration when there is "*no mystery*"

---

[3] Not a single figure is contained *anywhere* in the Award (Exhibit "B" to Respondent's Opposition). The "Case Summary" does *not* contain *any* figure relating to the *number* of shares being sought and, most importantly, *the amount of cash compensation being sought* or any other figure. *Id*. at p. 6. The "Relief Requested" simply states a *combined* compensatory and a punitive damage request for *both* the contract (consisting of a shares of Infinera and cash compensation) and the sexual harassment claims combined. *Id*. at p. 7. The Award pertaining to the contract claim, like the sexual harassment portion of the Award, contains *no calculation whatsoever*. *Id*. at p.8.

[4] And, the Panel did *not* indicate which of the Movant's *damage theories* set forth in her Amendment to the Statement of Claim it was adopting, *if any*. Movant asserted she should receive at least a 1 1/2&% back-end compensation up to 3% according to the strict language of the employment agreement including $60,000 in cash upfront compensation owed. Movant further asserted that she was the procuring source of another $1 million purchase from her customers made after she had to resign as a result of the sexual harassment being visited on her and was therefore entitled to an additional $15,000 cash compensation and either 1 ½% or 3% back-end warrant compensation depending on the Panel's interpretation of her employment agreement.

5

as to the calculation and the court is not required to speculate. Eljer Mfg., Inc., *supra* at 14 F.d 3d 1250. Only if there is "no possible route" to the damages awarded will an award be set aside or modified. Prostyakov v. Masco Corp., 513 F.3d 716, 723 (7th Cir.2008). This is true even if the Panel's interpretation of the Movant's employment agreement was "wacky" and resulted in the contractual damage award. Wise v. Wachovia Securities, LLC, 450 F.3d 265, 269 (7th Cir. 2006). Here, unlike the situation in Elier Mfg, Inc., supra, and the cases cited by Respondent, there is not attempt to make a double recovery ordering a party to pay damages awarded elsewhere in the award or are be counted twice. Jimmy John's Franchise, LLC v. Kelsey, --- F.Supp.2d ----, 2008 WL 1722188

at *5 (C.D.Ill. 2008).

13. Since the Award contains *neither calculations whatsoever* from which calculations can be made, it is *legally and factually impossible* for there to be "an *evident* material miscalculation of *figures*" as required by 9 U.S.C. § 11a.[5] What Respondent has done here is clearly a vexatious attempt to multiply the proceedings within the meaning of 28 U.S.C. § 1927.

14. What is particularly disingenuou*s* is that even, assuming *arguendo*, that

---

[5]The cases cited by the Respondent make this salient point patently clear. *Asturiana De Zinc Marketing, Inc. v. LaSalle Rolling Mills, Inc.*, 20 F. Supp. 2d 670, 673 (S.D.N.Y. 1998) concerned an award with lengthy and detailed calculations of damages and the mistake was, indeed, "evident." Similarly, in NetKnowledge Technologies, L.L.C. v. Rapid Transmit Technologies, 2007 WL 518548, *6 (N.D. Tex. Feb. 20, 2007), the arbitrator's calculations were contained in the award. Concerning that Defendant's argument in the latter case concerning other, less obvious "error," the Court stated:

> With regard to the amounts allegedly not paid by WaKuL to IBM, Ericsson has failed to show this Court how its arguments now are any different from the arguments previously rejected by the Arbitrator on sufficiency grounds. The Court finds that Ericsson has failed to show that "there was an evident material miscalculation of figures" with regard to these payments and therefore that the award is susceptible to modification by this Court pursuant to Section 11 of the FAA.

*Id*. at * 6. That, a prohibited re-arguing its position, is what Respondent is doing with opposition.

6

the Respondent is correct and the Panel awarded Movant no cash but $24 a share without subtracting the $5.40 warrant price, the Panel's calculation would be absolutely correct. The $5.40 per warrant exercise price *was paid out of the back-end commission due Movant*. That, $5.40, is her tax basis in the Infinera stock which is treated as income and the realized gain above that amount (had Movant been given her shares and sold as she said she wanted to) would be taxed as a long-term capital gain. Regardless, the *entire price* reflects the Movant's interest in the stock. The fact that the warrants were exerciseable at $5.40 *payable* from Movant's backend commissions is *irrelevant* to the determination of the *value* of the stock owed Movant and hence her damages

15. The Panel had to determine that the Movant was entitled to back-end commissions to award her *anything* on the contract claim. By arguing that the $5.40 must be subtracted from the share price to determine damages means that the movant receives *zero* back-end commissions. That is simply ludicrous.[6]

16. In summary, the Movant sought the value of warrants that she earned. The *number of warrants was in dispute* as was their price for damage purposes. There was also a claim for cash compensation. What warrants, if any, the Panel determined Movant earned and the price the Panel believed would make her whole as well as the amount of cash compensation, if any, is a complete *mystery*. Therefore, it is legally *impossible* for

---

[6] If, for example, Infinera stock had come public at $5 a share, forty cents less than the exercise price, and remained there, the warrants would still have considerable value to Movant. Under the Respondent's argument Movant would get nothing because the market price was lower than the warrant price. Respondent would then pocket the $5 itself. So, instead of receiving a 1 ½% back-end commission, Movant would receive 0%. However, in the real world, Movant could exercise the warrants at $5.40, sell the 10,847 shares for $54,235 and then pay even the highest marginal federal tax rate of 35% and 3% Illinois tax or a total of $22,258 and still pocket the remaining $31,977. In short, Respondent's entire contention is premised on a wholly disingenuous Alice-through-the-looking-glass argument that the back-end *commissions* owed Movant (the funds from which the warrants were to be purchased) under her employment agreement are not Movant's and therefore must be deducted from her damages.

Respondent to allege that an "evident material miscalculation" since the calculation is completely unknown.

18.  The Respondent has unreasonably and vexatiously multiplied these proceedings and has caused the Movant to incur expenses as a result thereof. ,

WHEREFORE, the Movant prays that this Court entered an Order requiring Respondent to pay all expenses and costs, including reasonable attorney's fees as a result of Respondent having unreasonably and vexatiously multiplied these proceedings.

                                                Respectfully submitted,

                                                One of Movant's Attorney's

Nicholas P. Iavarone, Esq.
11 S. LaSalle Street, Suite 1600
Chicago, Illinois 60604
(312) 637-9466
(800) 417-0580 (fax)

Alan F. Block, Esq.
Block & Landsman
Chicago, Illinois
11 S. LaSalle Street, Suite 1600
(312) 251-1144
(312) 1147 (fax)